1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7                         **DISTRICT OF NEVADA**
8
9   JOEL KENNETH PARKER,
         *Petitioner*,                          2:11-cv-01223-KJD-CWH
10
    vs.
11                                               ORDER
12  DWIGHT NEVEN, *et al.*,
13         *Respondents*.
14
15          This habeas matter under 28 U.S.C. § 2254 comes before the Court on a *sua sponte*
16  inquiry as to whether the petition is subject to dismissal as time-barred and also as completely
17  unexhausted.  This order follows upon a prior show-cause order (#7) and petitioner's two
18  responses (## 25 & 26) thereto.
19                                   ***Background***
20          Petitioner Joel Kenneth Parker challenges his Nevada state conviction, pursuant to a
21  jury verdict, of burglary and robbery.  The following procedural history is undisputed.
22          Petitioner initially was found guilty of burglary, robbery and grand larceny auto.  On
23  direct appeal, the Supreme Court of Nevada affirmed as to the burglary and robbery
24  convictions.  The court reversed the grand larceny auto conviction and remanded with
25  instructions to vacate that conviction.
26          The state supreme court's order was filed on December 2, 2008.  An amended
27  judgment of conviction was filed in the state district court on January 22, 2009, and the time
28  to appeal the amended judgment expired on Monday, February 23, 2009.  The time to file a

1  petition for a writ of *certiorari* in the United States Supreme Court from the December 2, 2008,
2  state supreme court order expired on March 2, 2009.

3       Thereafter, while petitioner sought procedural relief, only, in state district court, the only
4  proceeding that he filed in the state supreme court was a letter construed as a petition that
5  was filed on May 18, 2010.  The court denied the petition on the following grounds:

6
7             This is a proper person petition for extraordinary relief.  We
        have reviewed the documents submitted in this matter, and
        without deciding upon the merits of any claims, we decline to
8       exercise original jurisdiction in this matter. . . . .

9  The state supreme court denied the petition on June 9, 2010, and the remittitur issued on July
10  8, 2010.  Petitioner submitted an untimely petition for rehearing on July 20, 2010, after the
11  issuance of the remittitur, which was denied on September 13, 2010.

12       The federal petition was mailed to the Clerk of this Court on or about July 25, 2011.

13                                          ***Time-Bar***

14       Pursuant to *Herbst v. Cook*, 260 F.3d 1039 (9th Cir. 2001), the Court *sua sponte* has
15  raised the question of whether the petition is time-barred for failure to file the petition within
16  the one-year limitation period in 28 U.S.C. § 2244(d)(1).

17       **Base Calculation of the Limitation Period**

18       Under 28 U.S.C. § 2244(d)(1)(A), the federal one-year limitation period, unless
19  otherwise tolled or subject to delayed accrual, begins running after "the date on which the
20  judgment became final by the conclusion of direct review or the expiration of the time for
21  seeking such direct review."  Under 28 U.S.C. § 2244(d)(2), the federal one-year limitation
22  period is statutorily tolled during the pendency of a properly filed application for state
23  post-conviction relief or for other state collateral review.  However, an untimely filing is not
24  "properly filed" and thus does not statutorily toll the federal limitation period.  *Pace v.*
25  *DiGuglielmo,* 544 U.S. 408 (2005).

26       In the present case, the federal limitation period began running after the time for
27  seeking *certiorari* review expired following the direct appeal on March 2, 2009.  Absent tolling
28  or delayed accrual, the limitation period expired one year later, on March 2, 2010.

The federal petition in this matter was not constructively filed until on or about July 25, 2011, more than a year and seven months after the federal limitation period already had expired, absent tolling or delayed accrual.  The May 18, 2010, original writ petition filed in the Supreme Court of Nevada was filed after the expiration of the federal limitation period on March 2, 2010, and that filing therefore has no effect on the calculation of the limitation period absent other tolling or delayed accrual.  The petition therefore is untimely on its face.

### Equitable Tolling

In an extensive filing, petitioner maintains that actions of a local jail and the state courts establish a basis for equitable tolling excusing his failure to file a timely federal petition.

Equitable tolling is appropriate only if the petitioner can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2009)(quoting prior authority).  Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002)(*quoting United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.2000)).  The petitioner ultimately has the burden of proof on this "extraordinary exclusion."  292 F.3d at 1065.  He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing.  *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).  *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

The following factual assertions[1] by petitioner and related contemporaneous facts noted by the Court provide the backdrop to petitioner's claim of equitable tolling:

> (1)     on November 22, 2006, petitioner was transferred to the North Las Vegas Detention Center (NLVDC) awaiting trial on federal charges;

---

[1]While petitioner attached documents with his responses, he did not make his factual assertions pursuant to a declaration under penalty of perjury as directed by the show-cause order.  Given a clearly contrary statement in another record that belies his assertions, this omission perhaps may have been with a reason.  Petitioner's factual assertions in any event do not establish a viable basis for equitable tolling on their face.  No recitation of a factual statement by petitioner by the Court constitutes a factual finding by this Court.

(2)    on January 6, 2009, this Court issued an order in 2:06-cr-00109-PMP-LRL to NLVDC to "provide the Defendant . . . while he is in custody in that facility access to the law library a total of twelve hours a day on the days he is presently scheduled to have access to the law library;"

(3)    the Court notes that nothing in the order or the minutes from the same date reflect that the Court was directing this extent of law library access for petitioner to file either a state or federal petition; rather the order was issued in connection with petitioner's request that he be allowed to file motions in proper person in the pending federal criminal case that his defense counsel had not filed or would not file;

(4)    petitioner maintains that NLVDC did not fully comply with the Court's order, although the jail offered him expanded library access on a different schedule;[2]

(5)    between January 21, 2009, and March 4, 2009, Parker thereafter filed four proper person motions in the federal criminal case, totaling 24 pages in the aggregate;

(6)    meanwhile, petitioner asserts that he wrote a February 14, 2009, letter to the presiding judge from his state criminal case requesting that the judge "assist me, by granting me counsel, or telling me what I must do;"[3]

(7)    in the letter as presented by petitioner, Parker expressly acknowledged that "I understand that without paying the filing fee, I may file a post-conviction petition for a writ of habeas corpus to obtain relief from my conviction;"

(8)    as noted previously herein, the federal limitation period began running after March 2, 2009, absent tolling or delayed accrual;

_____

[2]See #25, at 6-7.

[3]See #25, at 7-9.

(9)   petitioner asserts that on March 5, 2009, he received a letter from his prior deputy public defender stating that the letter to the judge had been forwarded to her, that she had placed the matter on calendar to withdraw as counsel, and allegedly that he thereafter could request a hearing to have an attorney appointed;[4]

(10)  petitioner asserts that he sent a second letter to the presiding judge on March 23, 2009, requesting that the judge appoint counsel;[5]

(11)  in the letter as presented by petitioner, Parker expressly acknowledged that "I understand that a petition that challenges the validity of my judgment or sentence must be filed within one year after entry of the judgment of conviction or, if an appeal has been taken from the judgment, within one year after the supreme court issues its remittitur;"

(12)  petitioner asserts that he received a letter from the state court clerk informing him that his March 5, 2009, request had been denied because, inter alia: "YOUR REQUESTS NEED TO BE MADE IN THE FORM OF A MOTION;"[6]

(13)  petitioner asserts that he filed a motion on June 3, 2009, requesting withdrawal of counsel, a copy of the defense file, and appointment of counsel;[7]

(14)  in the motion as presented by petitioner, he stated that "I did graduate from high school, and have some college, but I do not know the law;"

(15)  petitioner received notice that the motion was set for June 15, 2009; he was not transported from custody for the setting;

---

[4]See #25, at 9.

[5]See #25, at 9-10.

[6]See #25, at 10.

[7]See #25, at 10-11.

(16)   petitioner asserts that he sent a third letter – despite the clerk's prior admonition – to the judge on June 22, 2009, noting that he had not been transported to the hearing and requesting appointment of counsel;[8]

(17)   petitioner received notice on July 6, 2009, that his motion had been denied as moot because former counsel already had withdrawn and had sent the defense file to petitioner;[9]

(18)   petitioner asserts that he sent a fourth letter to the presiding judge on July 7, 2009, again requesting appointment of counsel, with the lay petitioner citing state court case authority allegedly establishing his right to be present at the hearing;[10]

(19)   petitioner asserts that also on July 7, 2009, he filed a motion for appointment of post-conviction counsel;[11]

(20)   on July 29, 2009, petitioner filed an 11 page *pro se* federal civil rights complaint against multiple defendants in the Eastern District of Arkansas in No. 3:09-cv-00113-JLH in that court;[12]

(21)   petitioner asserts that on August 17, 2009, he sent a fifth letter to the presiding judge requesting appointment of counsel;[13]

(22)   in the letter, Parker presented a multiple page argument, with numerous legal citations, urging that he had a right to be present at hearings;

---

[8]See #25, at 11.

[9]See #25, at 11-12.

[10]See #25, at 11-12.

[11]See #25, at 12.

[12]Petitioner refers to receiving a November 19, 2009, order in the Arkansas federal action later in his response, without further explanation as to the relevance of the action.  See #25, at 15-16.  The Court places petitioner's extensive *pro se* filings in the Arkansas federal action within the chronological recital to juxtapose petitioner's claim that extraordinary circumstances stood in the way of timely seeking judicial relief with the fact that petitioner was actively pursuing *pro se* litigation at the very same time half a country away.

[13]See #25, at 12-13.

(23)  on August 24, 2009, Parker undeniably received notice that his motion for appointment of counsel had been denied, based upon an explicit finding by the state district court that the court did not feel that appointment of counsel was necessary;[14]

(24)  petitioner thereafter filed a motion for reconsideration, and he received an in-person hearing on September 30, 2009, albeit before a different state district court judge;[15]

(25)  the online docket of the state district court reflect the following minutes for the hearing:

> Matter submitted by Mr. Turner. Court NOTED Deft. did not meet the threshold under Strickland, no showing of ineffectiveness of counsel, for example. Court further stated, Deft's Motion did not include Points and Authorities. Arguments by Deft. Court stated it could not give Deft. legal advice and ORDERED, motion DENIED WITHOUT PREJUDICE. Court explained Deft's Motion for Reconsideration must be heard by the judge who initially denied the Motion.

(26)  petitioner asserts that, following the September 30, 2009, hearing, he then "immediately proceeded to complete his application for post-conviction relief as Petitioner was hurried because he was under the impression that the petition was due December 30, 2009;"[16]

(27)  meanwhile, on November 12, 2009, petitioner filed a 31 page amended complaint in the Arkansas federal civil rights action in response to a screening order, and he thereafter filed a 5 page objection dated

---

[14]See #25, at 13-14.

[15]See #25, at 14-15.

[16]See #25, at 15.

-7-

November 24, 2009, to a November 19, 2009, report and recommendation;

(28)   petitioner asserts that from on or about November 26, 2009, through January 15, 2010, he was placed in segregation confinement pending an investigation, was denied law library access, and "his post-conviction application, case files, paperwork, [and] floppy disc . . . were either taken away from him or removed;"[17]

(29)   petitioner asserts that he sent a letter on December 26, 2009, to the presiding judge from his state court criminal trial requesting an extension of time to file a state post-conviction petition;[18]

(30)   in the letter as presented by petitioner, Parker stated, *inter alia*, that "I've started the application and it's almost finished" and that "I'm on 23(b)" of the grounds;"

(31)   in the letter as presented by petitioner, Parker acknowledged that "I used a lot of valuable time . . . trying to receive court appointed counsel," and he maintained that if he had been provided instruction from the court or clerk, he would have taken the necessary steps to seek relief;

(32)   petitioner asserts that "[o]n January 15, 2010, Petitioner was again granted access to the law library at the NLVDC and given back all paperwork, motions, floppy disc, writings and other legal material," such that his limitation on access while in segregation was confined to 49 days from November 26, 2009, through January 15, 2010;[19]

(33)   in the federal court action in Arkansas, petitioner filed a 3 page extension motion dated January 18, 2010, and a 5 page motion for reconsideration

---

[17]See #25, at 16-17.

[18]See #25, at 17-23.

[19]See #25, at 24.

of an order adopting a report and recommendation dated February 8, 2010;

(34)   petitioner asserts that on February 5, 2010, he filed a motion in state district court to extend the time to file an application for post-conviction relief;[20]

(35)   petitioner asserts, *inter alia*, that on February 12, 2010, his December 26, 2009, letter to the presiding judge was returned to him unfiled; that the hearing on his February 5, 2010, motion was set for February 24, 2010, but he was not transported for the setting; and that the state district court clerk also returned a filed copy of his December 26, 2009, letter to the judge;[21]

(35)   on Monday, March 1, 2010, the clerk for the Eastern District of Arkansas received and filed a 2 page notice along with a 22 page response to a motion to dismiss that was dated February 23, 2010, with extensive legal argument and citation to statutory and case authorities;

(36)   petitioner did not seek an extension of time prior to the above extensive filing in the Eastern District of Arkansas based upon a need to file a timely federal petition;

(37)   as noted previously herein, the federal limitation period expired the next day, on Tuesday, March 2, 2010, absent tolling or delayed accrual;

(38)   petitioner asserts that on March 3, 2010, he filed a motion or opposition to the State's opposition to his motion to extend the time to file a state post-conviction petition;[22]

/ / / /

---

[20]See #25, at 24.

[21]See #25, at 24-26.

[22]See #25, at 26.

(39)   petitioner asserts that he learned through an assistant federal public defender in early April 2010 and thereafter by mail notice on April 9, 2010, of the denial of his state court motion to extend the time to file a state petition; and he asserts that he mailed an appeal from the denial of the motion on April 7, 2010;[23]

(40)   petitioner asserts that he sent a letter to the state supreme court on May 8, 2010, presenting a complaint regarding the state district court judge's handling of his requests for relief;[24]

(41)   on June 9, 2010, the state supreme court, construing the letter as a petition for extraordinary relief, denied the so-construed petition expressly without deciding the merits of any claims, as described previously herein, with the remittitur issuing on July 8, 2010;

(42)   the state supreme court denied petitioner's untimely July 20, 2010, petition for rehearing on September 13, 2010;

(43)   petitioner did not at any time file the allegedly nearly-completed state post-conviction petition and seek to establish good cause for an untimely filing on an actually pending state petition;

(44)   more than a year passed after the state supreme court's June 9, 2010, order denying petitioner's letter as an original petition, prior to the July 25, 2011, constructive filing of the federal petition;

(45)   petitioner asserts that he was in disciplinary segregation from June 26, 2010, through his transfer to state custody on October 7, 2010, allegedly with no access to the law library or his legal materials;[25]

//// 

---

[23]See #25, at 26-27.

[24]See #25, at 29-33.

[25]See #25, at 34-35 & 39.  Parker's federal criminal jury trial occurred on June 28-30, 2010.

(46)   petitioner asserts that he did not have access to his legal materials again following the transfer until "sometime between March or April 2011;"[26]

(47)   meanwhile, despite the impediments alleged, petitioner filed in the federal action in Arkansas subsequent to the expiration of the federal limitation period on March 2, 2010, *inter alia*: (a) an April 14, 2010, notice of appeal; (b) a 6 page response to an order regarding service of certain defendants, with extensive case citation, dated May 4, 2010; (c) a 9 page motion requesting a pretrial conference and a scheduling order, with extensive case citation, dated June 4, 2010; (d) a 4 page motion for an extension of time dated June 13, 2010; (e) a 12 page objection to a report and recommendation, with extensive case citation and supporting exhibits, dated July 15, 2010, *during* the alleged placement in disciplinary segregation; (f) an August 23, 2010, notice of appeal, also during the alleged placement in disciplinary segregation;

(48)   thereafter, in the pending appeal to the Eighth Circuit in No. 10-3151 in that court, petitioner provided notice of his change of address following his transfer, and he sought and obtained, *inter alia*, five extensions from November 8, 2010, through March 4, 2011, with the court denying a sixth extension motion on March 30, 2011, and thereafter dismissing the appeal for failure to prosecute on May 27, 2011;

(49)   petitioner filed a 5 page motion to reopen the appeal on June 8, 2011, that the Court of Appeals denied on June 15, 2011, approximately a month before the filing of the federal petition in this matter;

(50)   petitioner sent a letter dated July 5, 2011, to the Clerk of this Court that was filed under #175 in No. 2:06-cr-00109 in his federal criminal case: (a) "to notify this Court that my application for 28 U.S.C. 2254 will be late

---

[26]See #25, at 39-40.

1    by 17 days being sent to this Court on or by July 25, 2011 as it is due

2    July 8, 2011" (b) stating that "the petition must be filed within one year

3    of remittitur," *i.e.*, the July 8, 2010, issuance of the remittitur by the

4    Supreme Court of Nevada on his extraordinary petition; and (c) stating

5    that "it's just been brought to my attention that the due date for the

6    application . . . is July 8, 2011, not September 13, 2011," as petitioner

7    had been proceeding on the incorrect premise that he had one year from

8    the denial of his untimely petition for rehearing in the state supreme

9    court to file a federal petition; and

10    (51)    through all of petitioner's above-described filings in the Nevada Eighth

11    Judicial District Court, the Supreme Court of Nevada, the Eastern District

12    of Arkansas, and/or the Eighth Circuit Court of Appeals from on and

13    before March 2, 2009, onward, petitioner did not submit any other

14    papers or requests for relief in this Court with regard to a federal petition

15    for a writ of habeas corpus prior to the constructive filing of the federal

16    petition on or about July 25, 2011, other than an alleged request to the

17    Clerk for a copy of the federal petition form on September 22, 2010.

18    Petitioner's detailed factual recital does not establish that extraordinary circumstances

19    stood in the way of and prevented the timely filing of a federal petition.

20    With regard to the circumstances specifically during the running of the federal limitation

21    period from March 2, 2009, through March 2, 2010, petitioner proceeds on fallacious

22    assumptions, *inter alia*: (a) that a noncapital habeas petitioner is automatically entitled to

23    appointment of counsel to prepare a state petition; (b) that it is a proper duty and function of

24    the state trial judge and state court clerk to advise a litigant how to proceed; (c) that he could

25    seek relief by a letter to a judge; and (d) that time constraints and the nature of the judicial

26    function permit judges to respond to letters from litigants.  Merely because petitioner persisted

27    in requesting appointment of counsel, requesting legal advice from court personnel, and

28    sending letters after being told that he instead must file motions does not establish a basis

1    for tolling of any limitation period, whether state or federal.  Moreover, petitioner was told

2    within the limitation period that counsel was not being appointed by the state court.  While his

3    incorrect belief that he had an unqualified right to appointment of counsel provided no basis

4    for tolling in the first instance, he clearly was advised within the limitation period that the state

5    court was not appointing counsel.

6        More to the point, none of the circumstances relied upon by petitioner in the *state*

7    courts stood in the way of his timely filing a *federal* petition.  Following his direct appeal,

8    petitioner had exhausted constitutional claims.[27]  Nothing in the circumstances that petitioner

9    describes prevented him from timely filing a federal petition by March 2, 2010.

10       A failure of the state district court to grant petitioner's request for appointment of

11   counsel to file a state petition did not stand in the way of petitioner filing a timely *federal*

12   petition.  He had no right to appointment of counsel to prepare and file either petition.

13       A failure of the state district court and state court clerk to provide petitioner legal advice

14   regarding the filing of a state petition did not stand in the way of petitioner filing a timely

15   *federal* petition.  It is not the role of court personnel to provide advice as to either.

16       A failure of the state district judge to actively correspond with petitioner in response to

17   his letters did not stand in the way of petitioner filing a timely *federal* petition.

18       A failure of the state district court to have petitioner transported to appear at state court

19   hearings did not stand in the way of petitioner filing a timely *federal* petition.  Petitioner's

20   argument that such failure deprived him of due process has no relevance to equitable tolling

21   of the federal limitation period.  Petitioner must demonstrate that extraordinary circumstances

22   stood in the way of and prevented him *from filing a timely federal petition*.  Not being

23   transported for state court hearings did not prevent petitioner from filing in a federal court,

24   whether in Las Vegas, Nevada, or Jonesboro, Arkansas.

25       */ / / /*

26

27   _____

28       [27]On direct appeal in No. 50137 in the state supreme court, petitioner presented, *inter alia,* a *Brady-*related claim, a challenge to the sufficiency of the evidence, and a double jeopardy challenge.

1    Nor did any alleged failure by the local jail to comply with the specifics of this Court's
2    order regarding law library access for petitioner's federal criminal case constitute an
3    extraordinary circumstance that stood in the way of and caused an untimely filing of the
4    federal petition.  The Court's order was issued in connection with petitioner's then-current
5    efforts to file *pro se* motions in his federal criminal case over and above what his counsel had
6    filed.  Nothing in the Court's order established a minimum threshold required for petitioner to
7    be able to file a federal habeas petition – as to a state criminal conviction that was not the
8    subject of the federal criminal case.  In any event, there is no requirement that a convicted
9    state inmate have law library access of "twelve hours a day on the days he is presently
10   scheduled to have access to the law library" in order to file a timely federal petition.

11   Petitioner maintains that he had access to neither the law library nor his legal materials
12   for a 49 day period from November 26, 2009, through January 15, 2010.  However, when
13   such access was restored on January 15, 2010, petitioner had (a) all of this legal materials
14   back, including a nearly completed state petition, (b) exhausted federal constitutional claims
15   from the direct appeal; and, importantly, (c) 46 days left in the federal limitation period.
16   Nothing stood in the way of petitioner filing a federal petition with the materials then on hand
17   and then seeking an opportunity to amend and/or a stay to exhaust any unexhausted claims
18   in the state courts.  *Cf. Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1014 (9th Cir.
19   2009)(the petitioner's lack of access to all of his files did not provide a viable basis for
20   equitable tolling because he could have filed a timely original petition and then sought to
21   amend to allege additional information).  A different issue perhaps might have been presented
22   if the petitioner had missed the federal deadline by a matter of days in March 2010 following
23   a diligent but unsuccessful effort to file a timely federal petition after getting his legal materials
24   back on January 15, 2010.  But petitioner did not file a federal petition until more than a year-
25   and-a-half later, on or about July 25, 2011.  Clearly, the limitations on access while petitioner
26   was in segregation confinement for 49 days prior to the expiration of the federal limitation
27   period did not cause a failure to file by March 2, 2010, much less all the way through to July
28   25, 2011.

Moreover, all of petitioner's extensive filings – in the state district court, in federal court in the Eastern District of Arkansas, in the state supreme court, and in the Eighth Circuit Court of Appeals – belie any claim that petitioner was unable to obtain sufficient access to the courts in order to file a timely federal petition.  His extensive filings prior to March 2, 2010 – including a 22 page filing in federal court in Arkansas the day before the expiration of the federal limitation period – wholly belie any claim that he could not instead have been filing a timely federal habeas petition.  Petitioner's extensive filings also after March 2, 2010, reinforce the point that even if he had established equitable tolling prior to that date, which he has not, he nonetheless demonstrated his ability to seek judicial relief more than a year prior to the July 25, 2011, constructive filing date of the federal petition.

The showing that petitioner tenders in support of his claim of equitable tolling thus – on its face – neither presents a potentially viable basis for equitable tolling nor warrants further factual development.  In the final analysis, however, petitioner's July 5, 2011, letter to the Clerk of this Court – referenced in numbered paragraph 50, *supra* – completely undercuts the already insufficient showing that petitioner has presented.  What the July 5, 2011, letter shows – by petitioner's own words – is that petitioner did not file a federal habeas petition sooner because he erroneously believed that he had a year from the conclusion of the state supreme court proceeding on his extraordinary petition to file a federal petition.  Petitioner's claims herein that the myriad circumstances extensively outlined in his response instead caused the untimely filing are belied by his own words.  Petitioner's own words belie a claim that anything other than his failure to properly calculate the running of the federal limitation period caused him to fail to file a timely federal petition.

Under established law, a petitioner's *pro se* status and alleged ignorance of the law does not provide a basis for equitable tolling of the federal limitation period.  *See, e.g.*, *Waldron-Ramsey*, 556 F.3d at 1013 n.4; *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006).  Miscalculation of the federal limitation period by the petitioner in particular does not provide a basis for equitable tolling.  *Waldron-Ramsey*, 556 F.3d at 1011.  Petitioner's own words establish that he directed his efforts extensively to other litigation in state and federal

-15-

court under an erroneous belief that he had a year from the conclusion of the state supreme court proceedings on his extraordinary writ petition to file a federal petition.  He did not.  The federal limitation period already had expired before he filed that proceeding.[28]

Petitioner therefore has failed to demonstrate that extraordinary circumstances stood in his way and prevented a timely federal filing.  Nor has petitioner demonstrated that further factual development adding further detail potentially would lead to a different conclusion.

Petitioner further has failed to demonstrate that he pursued his rights diligently.  Dogged pursuit of other litigation in other courts, including a federal action in Arkansas, does not demonstrate that petitioner pursued his rights diligently with regard to federal post-conviction relief.   Persistence in repeatedly requesting collateral requests for appointed counsel and/or to be transported to state court hearings does not constitute diligence in doing what actually was necessary to present timely post-conviction claims.   It would have been clear to any reasonable litigant, including a lay litigant, very early on that the state court was not going to appoint counsel, respond to requests for relief presented in letters, and/or order that petitioner be transported from custody for motion settings after the conclusion of his original state criminal proceeding.  Petitioner's focus on such matters rather than on actually presenting claims *pro se – i.e.,* not himself seeking relief after not obtaining the requested assistance and/or personal attendance at motion settings – perhaps may show other characteristics.  However, it does not show diligence by the lay litigant in actually doing what was necessary to pursue post-conviction relief.  A diligent petitioner – like many who pursue post-conviction relief in this Court – instead would have promptly sought post-conviction relief

---

[28]The federal limitation period already had expired even if the Court applies an improper counting-the-days approach to the limitation period, *i.e.,* eliminating the 49 days in segregation confinement from November 26, 2009, through January 15, 2010, from the count.  Such an approach would move the putative expiration date back to only April 20, 2010.  The extraordinary writ petition proceeding commenced on May 18, 2010.  A petitioner in any event must establish that the alleged extraordinary circumstances *caused* an untimely filing.  A court does not cull out periods in isolation that did not – singly or in combination with other factors – in fact proximately cause an untimely filing.  As discussed previously in the text, petitioner had the resources in hand on January 15, 2010, with which to file a timely federal petition.  He simply did not do so due to another instead causal factor – his miscalculation of the running of the federal limitation period – that does not provide a basis for equitable tolling.  Moreover, the state proceeding concluded on July 8, 2010, such that even with statutory tolling under § 2244(d)(2), 49 days would not have rendered the petition timely.

rather than continuing to doggedly litigate his other procedural requests after no appointment of counsel was forthcoming.  That is, diligence requires that, after one has not received requested help, one then proceeds promptly to seek relief without such assistance.[29]

Petitioner therefore has failed to establish a potentially viable basis for equitable tolling or for further inquiry regarding same.[30]

**Delayed Accrual**

Petitioner further suggests that he can establish delayed accrual under 28 U.S.C § 2244(d)(1)(B) on the basis that the limitation period instead ran from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such action."  He maintains that the alleged circumstances discussed above as to equitable tolling constituted such an impediment.

Delayed accrual is available to a petitioner under § 2244(d)(1)(B) only if the alleged impediment "altogether prevented him from presenting his claims in *any* form, to *any* court."

---

[29]The Court acknowledges petitioner's assertion that he was in segregation confinement without his legal materials at the expiration of the state limitation period in December 2009.  However, the issue here is equitable tolling of the federal limitation period, and petitioner did not show diligence in actually pursuing post-conviction relief rather than collateral requests over the course of the much longer interval prior to July 25, 2011.  Even with regard to state post-conviction relief, petitioner did not promptly and diligently actually file an allegedly nearly-completed state petition after gaining access to his materials again but instead continued to instead seek procedural relief by letter and motion.  At some point, diligence requires that a petitioner actually present claims rather than merely seek procedural relief and accommodation while contesting collateral procedural matters such as, *inter alia*, a failure to transport petitioner for motion settings.

[30]Petitioner states in his response that he has unspecified "much more documentation and evidence," and he requests "an opportunity to present it in a hearing or at the very least have representation to present said evidence."  E.g., #25, at 40.  The show-cause order was explicit that: (a) all assertions of fact made in response to the order must be detailed, must be specific as to time and place, and must be supported by competent evidence; and (b) the petition would be dismissed as time-barred if petitioner failed to demonstrate with specific, detailed and competent evidence – in the show-cause response – that the petition is timely. #7, at 6-7.  The Court further clearly has denied petitioner's requests for appointment of counsel.  After filing 85 pages in response to the show-cause order with 34 pages of attached documents, petitioner cannot obtain an evidentiary hearing, an otherwise in-person hearing, and/or appointment of counsel on a conclusory assertion that he has "much more documentation and evidence" to present.  Federal courts address most matters, in all types of litigation, on the papers rather than via in-person proceedings.  Petitioner's premise that he must have an in-person hearing to be able to present his position is not well-founded.  Nor is his assumption that he must have counsel to respond fully to the show-cause order.  The Court is fully confident that, if petitioner has not established a viable basis for tolling in 85 pages, further proceedings based upon a conclusory claim of having unspecified "more evidence" would not lead to a different outcome.

1    *Ramirez v. Yates*, 571 F.3d 993, 1001 (9th Cir. 2009)(emphasis in original).  Nothing in the

2    alleged circumstances relied upon by petitioner prevented him from presenting his claims in

3    any form to any court while the federal limitation period otherwise was running after March 2,

4    2009, through March 2, 2010.  During that time, petitioner presented multiple papers to the

5    state district court and also initiated and pursued a federal civil rights action in the Eastern

6    District of Arkansas.  Nothing that the state district court or his jailers did or failed to do during

7    that time period prevented petitioner from also filing a timely federal habeas petition in this

8    Court in Las Vegas while he was incarcerated in North Las Vegas.  He simply did not file a

9    federal petition during the putative running of the federal limitation period while he instead was

10   pursuing other judicial relief in multiple other courts, both prior to and following the putative

11   expiration of the federal limitation period on March 2, 2010.

12       Delayed accrual under § 2244(d)(1)(B) therefore is not applicable to this case.

13       The Court accordingly holds that the federal petition is time-barred under § 2244(d).

14                                   ***Exhaustion***

15       The Court further holds in the alternative that the petition is subject to immediate

16   dismissal because the petition is completely unexhausted.

17       Under 28 U.S.C. § 2254(b)(1)(A), a habeas petitioner first must exhaust his state court

18   remedies on a claim before presenting that claim to the federal courts.  To satisfy this

19   exhaustion requirement, the claim must have been fairly presented to the state courts

20   completely through to the highest court available, in this case the Supreme Court of Nevada.

21   *E.g., Peterson v. Lampert*, 319 F.3d 1153, 1156 (9th Cir. 2003)(*en banc*); *Vang v. Nevada*,

22   329 F.3d 1069, 1075 (9th Cir. 2003).  The exhaustion requirement insures that the state

23   courts, as a matter of federal-state comity, will have the first opportunity to pass upon and

24   correct alleged violations of federal constitutional guarantees.  *See, e.g., Coleman v.

25   Thompson*, 501 U.S. 722, 731(1991).  A petition that is completely unexhausted is subject to

26   immediate dismissal without further advisements or proceedings.  *See, e.g., Rasberry v.

27   Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006); *Jiminez v. Rice*, 276 F.3d 478, 481 (9th

28   Cir.2001).

1    In the present case, all of the claims in the federal petition are based upon claims of

2  ineffective assistance of counsel.  While petitioner includes additional conclusory allegations

3  of a denial of, *e.g.,* due process, all of the claims are grounded in operative factual allegations

4  asserting that petitioner's constitutional rights were violated due to alleged ineffective

5  assistance of counsel.

6    Such claims are not considered on direct appeal under Nevada state practice.  Nor

7  were any such claims of alleged ineffective assistance of counsel either raised or considered

8  on direct appeal in this particular case.

9    The only proceeding perhaps for collateral review filed by petitioner was the May 18,

10  2010, original petition for extraordinary relief filed in the Supreme Court of Nevada.

11    As noted previously, the state supreme court denied the original petition on the

12  following grounds:

13           This is a proper person petition for extraordinary relief.  We
             have reviewed the documents submitted in this matter, and
14           without deciding upon the merits of any claims, we decline to
             exercise original jurisdiction in this matter. . . . .
15

16  June 9, 2010, Order Denying Petition in No. 56047.

17    It is long-established law that a claim is not fairly presented and is not exhausted when

18  a petitioner fails to present the claim in state district court under available state post-

19  conviction procedures and instead presents the claim in an original petition to the state's high

20  court seeking to invoke an extraordinary discretionary jurisdiction.  *See, e.g., Ex parte Hawk*,

21  321 U.S. 114, 116 (1944); *Sweet v. Cupp*, 640 F.2d 233, 238 (9ᵗʰ Cir. 1981).  *Accord Lindquist*

22  *v. Gardner*, 770 F.2d 876 (9ᵗʰ Cir. 1985).  *See also Castille v. Peoples*, 489 U.S. 346, 351

23  (1989)(presenting a claim in a procedural context in which the merits of the claim will not be

24  considered, or will be considered only in special circumstances, does not constitute fair

25  presentation of the claim); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9ᵗʰ Cir. 1994)(applying the

26  rule to the filing of an original writ petition in a state high court).

27    Accordingly, even if this Court were to assume, *arguendo*, that the ineffective

28  assistance claims in the federal petition are the same as any claims in the original proceeding

1   in the Supreme Court of Nevada, the presentation of the claims in that petition or letter did
2   not fairly present and exhaust the claims in that court.   The Supreme Court of Nevada
3   explicitly stated that it did not consider the merits of any claim when it declined to exercise an
4   extraordinary original jurisdiction.

5         Petitioner's arguments that the state supreme court has such an extraordinary original
6   jurisdiction accordingly beg the question.   The court's order declining to exercise the
7   extraordinary discretionary jurisdiction expressly without deciding the merits of any claim leads
8   to a conclusion that no claims were fairly presented to and considered by the court in that
9   proceeding. *E.g., Ex parte Hawk*, *supra*.

10         Petitioner's arguments that exhaustion was not required because he allegedly had no
11   available state process also miss the mark.

12         The state district court's failure to appoint counsel did not render state corrective
13   process unavailable.   Nor did the state district court's failure to order that petitioner be
14   transported for motion settings after his conviction render state corrective process unavailable
15   to petitioner.   Countless inmates timely file state post-conviction petitions without first being
16   appointed counsel and/or transported for state court motion settings.

17         Nor did the state district court's denial of petitioner's post-expiration request for an
18   extension of time to file a state petition render state corrective process unavailable to
19   petitioner.  Petitioner at any time after the expiration of the state limitations period could have
20   filed a state petition (as, indeed, he actually could have done prior to the expiration of the
21   limitation period with diligence in actually presenting claims) and sought to establish good
22   cause for his failure to file timely petition.   Even if that petition ultimately were denied as
23   untimely, through to a completed appeal from denial of the petition in the state supreme court,
24   petitioner then would have exhausted his ineffective-assistance claims through available state
25   court procedure.  Petitioner instead presented requests to the district court for an extension
26   of the limitation period and thereafter sent a letter to the state supreme court that was denied
27   as an extraordinary petition without consideration of the merits.  Petitioner's failure to actually
28   file the allegedly nearly-completed state petition – not any state action – stands as the only

reason for his failure to exhaust his claims through available state court procedure.  In short, state corrective process was available, but it simply was not actually invoked by petitioner by the filing of the allegedly nearly-completed state petition.

Whether the issue is equitable tolling, delayed accrual under § 2244(d)(1)(B), or instead as here exhaustion of state judicial remedies, a petitioner at some point must press forward and actually present claims in a post-conviction petition.  Being denied appointment of counsel, transport for a personal appearance for motion settings, or even a requested extension of the state limitations period did not render state corrective process unavailable.  Petitioner asserted that he had a nearly-completed state post-conviction petition, but he never actually filed it in the state district court and pursued it through to the state high court.  The state supreme court's order declining to hear his May 2010 petition, without addressing the merits of any claims, clearly did not foreclose any further possible relief in the state courts.[31]

Petitioner's remaining arguments and inapposite legal citation similarly provide no basis for constructive exhaustion of the wholly unexhausted petition.

The Court accordingly holds in the alternative that the petition also is subject to immediate dismissal as a wholly unexhausted petition.

IT THEREFORE IS ORDERED that the petition shall be DISMISSED with prejudice as time-barred.

IT FURTHER IS ORDERED that a certificate of appealability is DENIED.  Jurists of reason would not find the Court's dismissal of the petition as time-barred or, in the alternative, as completely unexhausted to be debatable or wrong.  With regard to untimeliness, petitioner's extensively detailed presentation does not establish a potentially viable basis for

---

[31]Petitioner points to the state supreme court's September 13, 2010, order denying his untimely rehearing petition where it directed: "The clerk of this court is directed to accept no further filings in this matter."  He urges that "it became apparent to Petitioner that any other attempts or filings with the Nevada State Supreme Court would be futile and his only option of being heard would come in a 28 U.S.C. § 2254."  #26, at 5 & 36.  Nothing in the state supreme court's order foreclosing further filings in that proceeding prevented petitioner from filing other state proceedings.  He simply did not do so.  Throughout his litigation of collateral procedural points in the state district court and state supreme court, petitioner simply did not focus on what a diligent petitioner instead would have focused on – actually completing and filing a state petition.

equitable tolling or delayed accrual under 28 U.S.C. § 2244(d)(1)(B).  The federal limitation period expired on its face on March 2, 2010, but the federal petition was not constructively filed until on or about July 25, 2011.  Over the course of the time from March 2, 2009, forward, petitioner filed and pursued multiple requests for procedural relief in the state district court, a civil rights action in federal court in Arkansas, an appeal to the Eighth Circuit in that action, and a proceeding in the state supreme court.  Nothing in the state district court's denial of petitioner's requests, *inter alia*, for appointment of counsel, to be transported for motion settings, and/or for an extension of time to file a state petition stood in the way of and prevented petitioner from filing a timely *federal* petition.  Nor did a 49 day period in segregation confinement proximately cause an untimely federal filing.  A July 5, 2011, letter by petitioner to the Clerk of this Court instead reflects that the untimely federal filing was due to petitioner's miscalculation of the federal limitation period.  **See text, *supra*, at 2-17.**  With regard to exhaustion, the only proceeding pursued through to the state supreme court relevant to exhaustion of the claims in the federal petition was an original extraordinary petition as to which the state high court declined to exercise its discretionary jurisdiction expressly without addressing the merits of any claims.  Petitioner otherwise cannot establish an absence of corrective state process as opposed to a failure to actually directly invoke that process.  Petitioner never instead filed the state petition that he asserts that he had nearly completed in late 2009.  **See text, *supra*, at 17-20.**

IT FURTHER IS ORDERED that counsel for respondents shall enter a notice of appearance by an individual attorney within **twenty-one (21) days** of this order.  No further response is required at this time, other than to respond to any orders by a reviewing court.

The Clerk of Court shall enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

DATED:   July 18, 2014

_____
KENT J. DAWSON
United States District Judge

-22-